UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 4:20-cr-00329-SRC |
| v. ) | |
| ) | |
| GARY D. PRIMM, JR., ) | |
| ) | |
| Defendant. ) | |

# GOVERNMENT'S TRIAL BRIEF

COMES NOW the United States of America, by and through its attorneys, Sayler A. Fleming, United States Attorney for the Eastern District of Missouri, Kyle T. Bateman and John J. Ware, Assistant United States Attorneys for said District, and submits the following trial brief.

## I.  FACTS

Defendant Primm is charged in a three-count indictment with, Count 1, Failure to File a Return - for his company, United Auto Defense 2014, in violation of Title 26, United States Code, Section 7203; Count 2, Tax Evasion – personal 2014, in violation of Title 26, United States Code, Section 7201; and Count 3, Tax Evasion – personal 2015, in violation of Title 26, United States Code, Section 7201.

Primm owned and operated United Auto Defense, LLC ("United") from 2012 until at least 2017.  United was a company that operated mainly as a call center that marketed auto warranties. United was located in St. Charles, Missouri. United operated as a corporation for tax purposes, and Primm was the sole person directing United's business from 2013 until United ceased operations in 2017.  United has not filed a corporate tax return, Form 1120, since 2012.

United filed a Form 1120 for tax year 2012, which was signed by Jerome Martin, Primm's cousin.

Primm received substantial personal income from United during tax years 2014 and 2015, but has not filed an individual income tax return since 2011. During 2014 and 2015, Primm diverted United funds to a nominee bank account instead of his personal bank account, and filed false forms with the IRS.

Primm's unreported income comes from three sources- W-2 wages from United, distributions he took from United (or capital gains), and commissions from outside companies. During tax years 2014 and 2015, Primm received W-2 wages from United in amounts of $20,000 and $119,425 in 2014 and 2015, respectively. Additionally, Primm received distributions from United and directed those distributions to be deposited into a bank account in the name of an entity he controlled called International Megalodons, LLC ("Megalodons"). Megalodons has no discernible business purpose and appears to be a nominee for Primm. Primm was the sole signatory on the Megalodons bank account. Primm received substantial distributions from United in the form of wire transfers and cash withdrawals for tax years 2014 and 2015.

Primm also received commissions from entities doing business with United. These entities were Marathon Administrative Company ("Marathon"), Royal Administrative Company ("Royal"), and related finance companies Sparta, Omnisure, and Paylink. Many of these commissions originated and were paid to Primm from a company called United Auto Defense Reinsurance Co. ("United Reinsurance"). This was a company nominally owned by Primm but according to Allen Kreke Marathon executive, was controlled by Marathon, including that Marathon controlled United Reinsurance's bank account. According to Allen Kreke, Marathon executive, any payments from Marathon or United Reinsurance to Primm were commissions and

Primm directed that wire payments be deposited into his Megalodons bank account. For tax years 2014 and 2015, Primm received payments for commissions over $50,000 and $100,000, respectively.

Primm failed to file Forms 1040 and, consequently, failed to report income from W-2 wages, distributions, and commissions of, for tax years 2014 and 2015, resulting in a substantial tax due and owing. The tax loss with respect to Primm's failure to file a corporate return for United for tax year 2014 is also substantial.

## II.  LEGAL ANALYSIS

### A.  ELEMENTS OF THE OFFENSE

#### 1.  26 USC 7201 – TAX EVASION

The crime of tax evasion as charged in Counts 2 and 3 is proscribed by Title 26, United States Code, Section 7201.  Conviction requires proof that 1) the defendant owed substantial income tax in addition to that which he reported on a particular tax return, 2) the defendant attempted to evade and defeat that additional tax, and 3) the defendant acted willfully. *Kawashima v. Holder,* 565 U.S. 478, 488 (2012); 8th Circuit Pattern Jury Instructions.  Distilled, the elements are 1) willfulness, 2) tax deficiency, and 3) affirmative act).  *Sansone v. United States*, 380 U.S. 343, 351 (1965); *United States v. Jewell*, 614 F.3d 911, 923 (8th Cir. 2010).

Venue for a §7201 charge is proper in any district where an affirmative act occurred or where a false return was prepared, filed or signed. *Kowalsky v. United* States, 290 F. 2d 161, 162-3 (5th Cir. 1961).  Each year of evasion stands alone, so that failure to pay taxes in multiple years constitutes separate offenses. *United States v. Smith*, 335 F.2d 898, 901 (7th Cir. 1964).  There is a six year statute of limitations against § 7201 prosecutions; however this period is measured from the last affirmative act of evasion.  26 USC 6531(2); *United States v. Murphy*,

824 F.3d 1197, 1206 (9th Cir. 2016); *United States v. Anderson*, 319 F.3d 1218, 1219 (10th Cir. 2003).

**a. Willfulness**

Willfulness as applied to 7201 *et seq* means "a voluntary, intentional violation of a known duty." *Cheek v. United States*, 498 U.S. 192, 200-01 (1991). Thus, the Government must establish that a defendant was aware of his obligations under the tax laws in order to prove evasion. *United States v. Bishop*, 264 F.3d 535, 546 (5th Cir. 2001). "[W]illfulness is a question of fact, direct proof thereof is not essential, [ ] it may be inferred from acts and circumstances. *United States v. Marttila*, 434 F.2d 834, 836 (8th Cir. 1970); see also *United States v. Morris*, 723 F.3d 934, 941 (8th Cir. 2013) (citing *United States v. Kouba*, 822 F.2d 768, 773 (8th Cir. 1987) (stating that "willfulness can be demonstrated circumstantially.").

Direct proof of willfulness is rare but can be proved in any number of inferential ways including:

1) Defendant's history of tax non-compliance, *United States v. Fairchild*, 819 F.3d 399, 409 (8th Cir. 2016); *United States v. Mathews*, 761 F.3d 891, 894 (8th Cir. 2014);

2) Defendant's questionable tax compliance, *United States v. McKee*, 942 F.2d 477, 480 (8th Cir. 1991);

3) A consistent pattern of not reporting income, *United States v. Morris*, 723 F.3d 934, 940 (8th Cir. 2013);

4) Defendant's submission of inaccurate W-4s, *United States v. Brooks*, 174 F.3d 950, 955 (8th Cir. 1999);

5) Disregard of an IRS notice informing defendant of his tax duty *United States v. Poschwatta*, 829 F.2d 1477 (9th Cir. 1987);

      6)      An accountant's reminder to file taxes, *United States v.* Schiff, 612 F.2d 73, 78 (2d Cir. 1979);

      7)      Submission of tax protest literature to the IRS, *United States v.* Upton, 799 F.2d 432, 434 (8th Cir. 1986).

A large amount of income is itself proof of willfulness, if no return is filed. *United States v. Richards*, 723 F.2d 646, 648 (8th Cir. 1983); *United States v. Payne*, 800 F.2d 227 (10th Cir. 1986). For this reason, a defendant's W-2s are admissible in tax cases. *United States v. Bergman*, 813 F.2d 1027 (9th Cir. 1987).

**b. Tax Deficiency**

There are two things the Government must prove to show a tax deficiency. "[F]irst that the taxpayer had unreported income, and second, that the income was taxable." *United States v. Abodeely*, 801 F.2d 1020, 1023 (8th Cir. 1986) *citing United States v. Fogg*, 652 F.2d 551, 555 (5th Cir. 1981). "Proof of unreported taxable income by direct means is extremely difficult and often impossible." *Id.* "An unchallenged certificate of assessment is prima facie evidence of a deficiency when a taxpayer who filed no return is charged with tax evasion." *United States v. Silkman*, 220 F.3d 935, 937 (8th Cir. 2000). It is not necessary for conviction however, and there are several methods of indirect proof which are permissible, individually, or in combination, that can provide evidence of deficiency. *Id.* These methods are further discussed below.

    **i. Net Worth**

The net worth method involves establishing an "opening net worth" or net value of the taxpayer's assets at the beginning of a given year. It then proves increases in the taxpayer's net worth for each succeeding year during the period under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of

each of the years involved. The taxpayer's nondeductible expenditures, including living expenses, are added to these increases, and if the resulting figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the Government claims the excess represents unreported taxable income." *Holland v. United States*, 348 U.S. 121, 125 (1954).

"[T]he Government is required to establish with reasonable certainty, . . . an opening net worth, to serve as a starting point from which to calculate future increases in the taxpayer's assets (and that) . . . the correctness of the result depends entirely upon the inclusion in this (net worth) sum of all assets on hand at the outset. *United States v. Stone*, 531 F.2d 939, 941 (8th Cir. 1976) *citing Holland* at 132. The admission of tax returns is an endorsed practice of establishing an opening net worth as the returns chronicle whatever sources of legitimate income are earned in a particular time frame. *United States v. Lewis*, 759 F.2d 1316, 1330 (8th Cir. 1985).

One of the dangers of the net worth analysis "is the possibility of a preexisting legitimate source for [ ] remarkably high net worth." *Id.* Thus, if the taxpayer presents investigative leads of preexisting wealth, that can be "reasonably susceptible" of verification and would establish innocence, they must be checked for validity by the Government. *Holland* at 135-136. Otherwise, the trial court may consider the taxpayer's claims as true and dismiss the case. *Id.*

### ii.  Cash Expenditures

The cash expenditure analysis involves establishing expenditures in a given year which are not attributable to the resources at hand. "The beginning and ending net worth positions must be identified with sufficient particularity to rule out or account for the use of a taxpayer's capital to pay for his purchases. *Taglianetti v. United States*, 398 F.2d 558, 563 (1st Cir. 1968).

If the end of the year net worth portion shows an increase, that "increase reflects an added component of income." *Id.*

Unlike a net worth analysis, however, a formal net worth statement need not be prepared. "[T]he government has the duty only to establish the opening cash on hand balance for the beginning year; the income received less disbursements paid during that year will establish the opening funds for the next year, and so on." *United States v. Caswell*, 825 F.2d 1228, 1232 (8th Cir. 1987). The ultimate issue is "whether any expenditures found to be in excess of reported income can be accounted for by assets available at the outset of the prosecution period or non-taxable receipts during the period." *Taglianetti* at 565-66. The taxpayer's cash on hand must be established with reasonable certainty but need not be mathematically exact. *United States v. Mounkes*, 204 F.3d 1024, 1028 (10th Cir. 2000).

### iii. Bank Deposits

Analysis of bank deposits is an effective method of proving tax liability if the defendant's income is circulated through bank accounts. The method requires proof that 1) the taxpayer was engaged in an income producing business or vocation; 2) that the taxpayer made regular deposits of funds into bank accounts; and 3) that a full investigation of the transactions separated income, from non-income, deposits. These net taxable bank deposits, minus the income the taxpayer did report, equals the unreported income. *United State v. Esser*, 520 F.2d 213, 217 (7th Cir. 1975). "This method does not require proof of net worth." *United States v. Conaway*, 11 F.3d 40, 43 (5th Cir. 1993). "Such proof is not required because the evidence of bank deposits suffices to raise the inference that the taxpayer's income came from a taxable source." *Id.*

In this case, the Government will prove deficiency through bank deposits analysis, and more specifically, by a specific items method of proof. The nature of each distribution and

commission earned by defendant and attributable to him as income in the relevant years was considered. Non-income deposits were not considered in arriving at the deficiency amount. *United States v. Boulware*, 384 F.3d 794, 811 (9th Cir. 2014). The specific item method is actually a direct means of establishing deficiency and therefore the best. *United States v. Sabino*, 274 F.3d 1053, 1071 (6th Cir. 2001). Given the circumstances of this particular case, there is no more reliable way of establishing deficiency.

**c.  Affirmative Act**

An affirmative act of tax evasion constitutes "any conduct, the likely effect of which would be to mislead or to conceal." *Spies v. United States*, 317 U.S. 492, 499 (1943). There is a substantial overlap of proof in establishing willfulness and an affirmative act. A false statement to the IRS, for example, in most cases is an affirmative act <u>and</u> proof of willfulness. *United States v. Frederickson*, 846 F.2d 517, 520 (8th Cir. 1988). Whereas many of the proof examples cited in the above section regarding willfulness involved failure to act, i.e. ignoring reminders to file, history of not filing; a proactive measure is required for this element. Nonetheless, the type of conduct that is an affirmative act is broad. *United States v. Gorrell*, 922 F. 3d 1117, 1124 (10th Cir. 2019). Thus, the extensive use of cash, hiding expenditures, and submitting false information to the IRS, all qualify as affirmative acts. *United States v. Schoppert*, 362 F.3d 451, 460 (8th Cir. 2004). So is active disassociation from property. *United States v. Brooks*, 174 F.3d 950, 955 (8th Cir. 1999).

A variety of sketchy, but also seemingly routine business practices can also be affirmative acts to evade taxes. *United States v. Vernon*, 814 F.3d 1091, 1105 (10th Cir. 2016). Establishing a shell company is a prototypical example of an evasive act. *Id.* Filing false W-4 forms is an affirmative act. *United States v. Gross*, 626 F.3d 289, 297 (6th Cir. 2010). So is

covering up sources of income. *Spies*, 317 U.S. at 500. "Causing a business entity to pay personal expenses, and not filing a return, . . . is conduct likely to mislead or conceal." *United States v. Koerber*, 281 F. Supp. 3d 1185, 1198 (D. Utah 2017). However, so is commingling funds, even though legal in and of itself. *United States v. Gorrell*, 922 F.3d 1117, 1124 (10th Cir. 2019).

## 2.  26 USC 7203 – FAILURE TO FILE

The failure to file a tax return as charged in Count 1 is penalized by Title 26, United States Code, Section 7203. The elements of the crime are 1) the defendant was required to file a federal income tax return for a particular year; 2) the defendant knew that he was required to file such a tax return; and 3) the defendant willfully failed to file the required tax return before the time required by law. *United States v. Gleason*, 726 F.2d 385, 388 (8th Cir. 1984); *see United States v. McLain*, 646 F.3d 599, 603 (8th Cir. 2011). The Government does not have to prove that federal income tax is due or demonstrate an intent to evade tax under this section. *United States v. Hairston*, 819 F.2d 971 (10th Cir. 1987).

### a.  All corporations are required to file tax returns.  26 USC 6012(a)(2)

Defendant Primm as the sole officer of United Auto Defense was a person required to file its tax returns. Title 26, United States Code, Section 7343. *United States v. Neal*, 93 F.3d 219, 223 (6th Cir. 1996); *see also Lumetta v. United States*, 362 F.2d 644, 649 (8th Cir. 1966) (President of cement company required to file tax returns).

"A defendant can be guilty of failure to file a tax return even if he actually files a form with the I.R.S. if that form does not contain 'sufficient information from which the IRS can calculate tax liability." *United States v. Marston*, 517 F.3d 996, 1001 (8th Cir. 2008) *citing United States v. Grabinski*, 727 F.2d 681, 686 (8th Cir. 1984).

9

### b. Knowledge

The element of willfulness fundamentally subsumes the element of knowledge. Willfulness is the "intentional violation of a <u>known</u> (emphasis added) legal duty." *United States v. Jerde*, 841 F.2d 818, 821 (8th Cir. 1988). The Government need not prove bad purpose or evil motive. *Id.*

### c. Willfulness

The conduct must be willful, as that term is meant in all sections of the tax statutes. *United States v. Bishop*, 412 U.S. 346 (1973).

Tax due and owing computations are not necessary as an essential element of the charge, but are admissible as bearing on willfulness. *United States v. Wunder*, 919 F.2d 34, 37 (6th Cir. 1990).

## B. DEFENSES

### 1. No Deficiency

"A taxpayer may defend an evasion charge by proving there was no tax due and owing." *United States v. Silkman*, 156 F.3d 833, 836 (8th Cir. 1998). Establishing unclaimed deductions, personal exemptions, and/or expenses is one way of doing so. *Id.*, *United States v. Grabinski*, 727 F.2d 681, 687 (8th Cir. 1984). Showing that deposits considered by the IRS as income are actually nonincome items, income attributable to another year, and/or duplicative is another. *Kirsch v. United States*, U.S. 174 F.2d 595, 598-99 (8th Cir. 1949). And, under some theories of proof, establishing a cash hoard from the prior year. The burden of proof, however, shifts to the defense at this point. *Small v. United States*, 255 F.2d 604 (1st Cir. 1958). The issue though is one for the jury to decide. *United States v. Meyer*, 808 F.2d 1304, 1306 (8th Cir. 1987) (Jury

rejected defendant's contention that transactions were informal loans from his business rather than unreported income).

### 2. Good Faith

Good faith "reliance on expert advice can be an exonerating defense in criminal tax cases." *United States v. Segal*, 867 F.2d 1173, 1179 (8th Cir. 1989); *United States v. Meyer*, 808 F.2d 1304, 1306 (8th Cir. 1987). A defendant may invoke the defense of reliance on an accountant or other third party to negate the willfulness element, but only if the defendant can prove he or she made "complete disclosure of all the relevant facts" to the tax expert. *United States v. Meyer*, 808 F.2d 1304, 1306 (8th Cir. 1987); *see also United States v. Lefkowitz*, 125 F.3d 608, 618-619 (8th Cir. 1997) (finding sufficient evidence that defendant willfully caused preparation of materially false tax return, despite his claim that he mistakenly supplied incorrect information to his accountants). Reliance defenses have been rejected where the defendant failed to provide his or her tax preparer with the proper documentation to correctly prepare the return. *Scallen v. C.I.R.*, 877 F.2d 1364, 1371 (8th Cir. 1989) (*citing Foster v. Commissioner*, 391 F.2d 727, 732-33 (4th Cir. 1968)); *see also McGraw v. C.I.R.*, 384 F.3d 965, 973 (8th Cir. 2004). Advice of counsel or inefficiency of an accountant can negate willfulness, but do not constitute an absolute defense. *United States v. Civella*, 666 F.2d 1122, 1126 (8th Cir. 1981). Taxpayers asserting such reliance defense are still held to an ordinary business care and prudence standard, and their reliance on advice of others must be reasonable. *Boles Trucking, Inc. v. United States*, 77 F.3d 236, 242 (8th Cir. 1996). Evidence that the taxpayer was a successful and sophisticated businessman can defeat a reliance defense. *Segal*, 867 F.2d at 1179. A good faith disagreement with the law doesn't negate willfulness. *United States v. Karsky*, 610 F.2d 548 550 (8th Cir.

11

1979).  In fact, it is improper to admit evidence of a defendant's views of tax laws.  *United States v. Dykstra*, 991 F.2d 450, 452-53 (8th Cir. 1993).

Of course, a taxpayer who consciously avoids knowledge of his duty, being willfully blind, does not act in good faith.  *United States v. Bussey*, 942 F.2d 1241, 1246-49 (8th Cir. 1991).

## III.  EVIDENTIARY ISSUES

### A. EXPERT TESTIMONY

Under Federal Rules of Evidence, Rule 702, a qualified witness may testify as an expert, "(I)f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  The rule is one of inclusion, not exclusion.  *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1298 (8th Cir. 1997).  Expert testimony must be based on sufficient facts, be the product of reliable principles and methods, and the reliable application of those principles and methods to the facts.  Fed. R. Evid. 702.

District courts are given "wide latitude" in determining whether expert testimony has the requisite reliability to be admitted.  *First Union Nat. Bank v. Benham*, 423 F.3d 855, 861 (8th Cir. 2005).  This decision will not be disturbed unless clearly abused.  *Margolies v. McCleary, Inc.*, 447 F.3d 1115, 1120 (8th Cir. 2006); *United States v. Hughes*, 15 F.3d 798, 800 (8th Cir. 1994).

In this case, the Government will be qualifying IRS Revenue Agent David Comiskey as an expert federal tax examiner and accountant.  *United States v. West*, 58 F.3d 133, 140 (5th Cir. 1995) (IRS agent's specialized training assists jury in understanding tax implications of documentary evidence).  As mentioned above, Agent Comiskey had adequate facts and data to utilize the specific items method of determining defendant's tax deficiency, the most reliable method of proof available.  His testimony will demonstrate reliable application of this method to

defendant's financial records and is thus admissible. *United States v. Ellefsen*, 655 F.3d 769, 780 (8th Cir. 2011); *citing United States v. McElroy*, 587 F.3d 73, 82 (1st Cir. 2009) (Testimony of IRS agent that applies principles of tax accounting to particular facts is appropriate in tax evasion case).

### B. SUMMARY AND DEMONSTRATIVE EXIBITS

The Government intends to use various charts and demonstrative presentations during the course of this trial. Certain charts, including a chart outlining significant events, will also be utilized by the Government.

It has long been the rule that charts of the sort involved here may be exhibited to the jury during the trial in the discretion of the trial court in order that they "may guide and assist the jury in understanding and judging the factual controversy. *United States v. Downen*, 496 F.2d 314, 321 (10th Cir. 1974). "The use of summary charts, diagrams, and other visual aids is generally permissible in the sound discretion of the trial court." *United States v. McGhee*, 532 F.3d 733, 741 (8th Cir. 2008) (quoting *United States v. Wainright*, 351 F.3d 816, 820 (8th Cir. 2003)).

The Eighth Circuit, in *United States v. Smallwood*, 443 F.2d 535, 539 (8th Cir. 1971), *cert denied*, 404 U.S. 843 (1971), allowed the admission of charts that summarized other exhibits. The court stated, as follows:

> The court room use of summaries of business records, particularly where the actual records are voluminous and complex, is not only proper but advisable. (Citations omitted) Evidential use of such summaries rests within the sound discretion of the trial judge, whose action in allowing their use may not be disturbed by the appellate court except for an abuse of discretion.

*Id.* At 540; *see also King*, 616 F.2d at 1034. Summary exhibits that fairly summarize the evidence are authorized by Rule 1006 of the Federal Rules of Evidence. *See United States v. Orlowski*, 808 F.2d 1283, 1289 (8th Cir. 1986) *cert. denied* 482 U.S. 927 (1987). Rule 1006

13

states in part, "the contents of voluminous writings … which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." Fed. R. Evid. 1006. "Exhibits which may facilitate understanding of complex factual issues are to be encouraged for court room use." *Boston Sec. Inc. v. United Bonding Ins. Co.*, 441 F.2d 1302, 1303 (8th Cir. 1971).  *See also, United States v. Brickey*, 426 F.2d 680, 686-87 (8th Cir.), *cert. denied*, 400 U.S. 828 (1970); *Ping v. United States*, 407 F.2d 157, 159-60 (8th Cir. 1969) (summaries of checking accounts records in criminal tax case).

Charts and summaries may include assumptions and conclusions based upon evidence already in the record.  *Wainright*, 351 at 821.  All charts and summaries used by the Government during trial will be based on evidence in the record.  Any alleged inaccuracies in the summaries go, according to *Smallwood*, to the weight to be accorded to the summaries, not to their admissibility.  *Smallwood*, 443 F.3d at 540.  Moreover, the Government will propose a limiting jury instruction which cautions the jury that summaries do not constitute evidence, but only serve as aids in the jury's consideration of the facts.  *See e.g.*, Devitt & Blackmar, *Federal Jury Practice and Instructions* (Third Edition) Section 15.23.

Thus, it is clearly within the jurisdiction of the trial court to allow the use of charts at trial where they would be of assistance to the jury, subject to the appropriate limiting instructions, and such discretion will be subject to review only upon a clear showing of abuse and resulting prejudice to the opposing party.  *Smallwood*, 443 F.2d at 540; *Brickey*, 426 F.2d at 686-87; *King*, 616 F.2ed at 1034.

The use of charts in the opening statement and closing argument is governed by the same principles that apply to the use of charts at trial.  *See United States v. Churchill*, 483 F.2d 268, 273 (1st Cir. 1973); *United States v. Rubino*, 431 F.2d 284, 287 (6th Cir. 1970).  As described

14

above, the charts will help the jury picture the structure of the transactions at issue and the relationships of the defendants, witnesses, and entities involved, thereby effectuating the recognized goal of an opening statement – "to give the broad outlines of the case to enable the jury to comprehend it." *Virgin Islands v. Turner*, 409 F.2d 102, 103 (3d Cir. 1968), and "to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole." *United States v. Dinitz*, 424 U.S. 600 (1976) (Burger, C.J., concurring).

>Respectfully submitted,
>
>SAYLER A. FLEMING
>United States Attorney
>
> */s/ John J. Ware*
>JOHN J. WARE, #40880MO
>Assistant United States Attorney
>111 South 10th Street, Room 20.333
>St. Louis, Missouri  63102

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

                                             */s/ John J. Ware*
                                             JOHN J. WARE, #40880MO
                                             Assistant United States Attorney