UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| v. ) | Case No. 4:20-cr-00329-SRC |
| ) | |
| GARY D. PRIMM, JR., ) | |
| ) | |
| Defendant(s). ) | |

**Memorandum and Order**

In this tax-evasion prosecution, Defendant Gary D. Primm, Jr. claims that he is entitled to a judgment of acquittal because the United States did not meet its burden of proof with respect to willfulness and venue. In the alternative, Primm claims that numerous trial errors make him eligible for a new trial. The trial evidence painted a clear picture that Primm had filed tax returns in the past, acknowledged his bookkeeping problems to his friend, hired a bookkeeper, met with an accounting firm but then not only stymied their efforts to bring Primm into compliance with his tax obligations but also directed his business associates to divert money to shell corporations. Having addressed a number of Primm's issues before and during trial, and having carefully considered the present motion, the Court rejects each of Primm's arguments.

**I.      Background**

In July 2020, a grand jury in the Eastern District of Missouri returned a three-count indictment against Primm, charging him with: (1) willful failure to file return in violation of 26 U.S.C. § 7203; (2) tax evasion related to tax year 2014 in violation of 26 U.S.C. § 7201; and (3) tax evasion related to tax year 2015 in violation of 26 U.S.C. § 7201. Docs. 1–2. The Court held

a four-day jury trial on October 4–7, 2021. Docs. 108, 113, 114, 117. The jury unanimously found Primm guilty as charged on all three counts.

Primm now seeks a judgment of acquittal under Rule 29(c) of the Federal Rules of Criminal Procedure, or in the alternative, a new trial under Rule 33. Doc. 126. The United States filed a response in opposition to Primm's post-trial motion. Doc. 137. Primm did not file a reply and the deadline to do so has passed. As such, Primm's post-trial motion is now ripe and ready for ruling.

## II.   Motion for a judgment of acquittal

First, Primm argues that he is entitled to a judgment of acquittal under Rule 29 because the United States failed to meet its burden of proof with respect to willfulness and venue. Doc. 126 at pp. 4–6.

### A.   Standard

Rule 29 governs post-trial motions for judgment of acquittal. *See* Fed. R. Crim. P. 29(c)(2) ("If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal."). Such motions "put[] in issue the sufficiency of the evidence to sustain the verdict." *United States v. Lincoln*, 630 F.2d 1313, 1316 (8th Cir. 1980). The Eighth Circuit has explained the nature of a motion for a judgment of acquittal:

> A post-verdict motion for a judgment of acquittal . . . is . . . precisely like an appeal from a judgment of conviction on the ground that the evidence was not sufficient to sustain the verdict on which the judgment was entered. The court reviewing the sufficiency of the evidence, whether it be the trial or appellate court, must . . . view the evidence in the light most favorable to the verdict, giving the prosecution the benefit of all inferences reasonably to be drawn in its favor from the evidence. The verdict may be based in whole or in part on circumstantial evidence. The evidence need not exclude every reasonable hypothesis except that of guilt; it is sufficient if there is substantial evidence justifying an inference of guilt as found irrespective of any countervailing testimony that may have been introduced. If so, the issue of guilt or innocence has been properly submitted to the jury for its determination, and the motion for judgment of acquittal is properly denied.

*Lincoln*, 630 F.2d at 1316–17 (citations omitted). Courts will not lightly overturn a jury verdict, *United States v. Peneaux*, 432 F.3d 882, 890 (8th Cir. 2005), and will uphold a verdict as long as a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Jirak*, 728 F.3d 806, 811 (8th Cir. 2013); *see also United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006) (stating that the court "must uphold the jury's verdict even where the evidence 'rationally supports two conflicting hypotheses' of guilt and innocence" (quoting *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004))).

    **B.**     **Analysis**

Primm argues for a judgment of acquittal on Counts 1, 2, and 3 because the United States failed to meet its burden of proof as to willfulness. Doc. 126 at pp. 4–6. Specially, Primm claims that the evidence elicited at trial does not support a conviction, and that none of the evidence supports that Primm acted with the requisite willful *mens reas* . . .." *Id.* at p. 6. Additionally, specific to Count 1, Primm argues that he is entitled to a judgment of acquittal because the United States failed to establish venue. *Id.* The Court first addresses venue then proceeds to the evidence of willfulness.

    1.     **Venue**

Primm claims that the evidence presented at trial does not establish venue in the Eastern District of Missouri. Primm argues that "the prior tax return for United Auto Defense was filed from an office of business located in Georgia, that the financial aspects of the business were maintained in Georgia, and that the address on file with the Internal Revenue Service for United Auto Defense was a Georgia address." Doc. 126 at p. 6.

Rule 12(b)(3)(A)(i) required Primm to assert a claim of improper venue in a pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined

3

without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(A)(i).  Primm does not address either his failure to raise his venue objection in a pretrial motion or why he couldn't have done so.  *See* Doc. 126 at p. 6.

Primm orally moved for a judgment of acquittal on similar grounds at the close of the United States' case-in-chief.  Doc. 133, Trial. Tr. 4 at 47:10–48:14.  The Court denied Primm's motion, finding:

> **THE COURT:** . . . there's evidence that the company conducted its business operations in St. Charles, Missouri; that Mr. Primm officed at an office in St. Charles[,] Missouri; that Ms. Brown officed in St. Clair -- well, she home officed in St. Clair, Missouri and then officed [at] the office in St. Charles, Missouri; that the employees of the company were based in St. Charles, Missouri; and the company conducted its operations out of St. Charles, Missouri, not out of Georgia.
>
> It just happened to be that there's evidence that the company happened to be organized in Georgia because of Mr. Primm's relative who is in Georgia or relatives who are in Georgia and they had an ownership interest in the business, based on the testimony of Mr. Martin, that it was for the purpose of allowing Mr. Primm to avoid or helping Mr. Primm avoid non-compete issues. And that the business conducted substantial operations in St. Charles, Missouri.
>
> So on the basis of venue, I deny the motion.

*Id.* at 51:11–52:3.  The Court takes judicial notice that both St. Charles and St. Clair, Missouri are within the Eastern District of Missouri.  *See United States v. Lopez*, 880 F.3d 974, 982 (8th Cir. 2018) ("venue as a jurisdictional fact is a proper subject for judicial notice").  However, at Primm's request, the Court instructed the jury as follows with respect to venue:

> The prosecution must prove it is more likely true than not true that each offense charged was begun, continued or completed in the Eastern District of Missouri. You decide these facts by considering all of the evidence and deciding what evidence is more believable. This is a lower standard than proof beyond a reasonable doubt. The requirement of proof beyond a reasonable doubt applies to all other issues in the case, except as instructed in Instruction No. 6.

Doc. 120 at p. 10, Jury Instruction 10.  Following the Court's instruction, the jury unanimously found Primm guilty on Count 1.

4

Similarly, the Court finds that the basis for Primm's venue motion was reasonably available to him before trial, given that the evidence relates to matters that would have been within his own knowledge; and, given the narrow slice of evidence necessary to determine the venue issue, the Court could have determined the motion without a trial on the merits. For this reason alone, the Court would deny the motion.

For the sake of completeness, the Court turns to the merits. Like his oral motion at the conclusion of the United States' case-in-chief, Primm's post-trial motion fails to account for the overwhelming evidence presented at trial, and the Court finds that the motion not only lacks merit but borders on the frivolous. Viewing the totality of the evidence in the light most favorable to the verdict, and giving the United States the benefit of all reasonable inferences, *Lincoln*, 630 F.2d at 1316–17, the Court still concludes, for the reasons it set forth on the record at trial, that the evidence presented at trial established venue in the Eastern District of Missouri. *See* Doc. 133, Trial Tr. 4 at 51:11–52:3. *See also* Doc. 130, Trial Tr. 1 at 158:8–16 (Jerome Martin testifying that United Auto Defense operated out of St. Charles); Doc. 131, Trial Tr. 2 at 29:23–30:1 (Clayton Logomasini testifying that United Auto Defense operated out of St. Charles); *Id.* at 89:18–24 (Stacey Brown testifying that United Auto Defense operated out of St. Charles); Doc. 132, Trial Tr. 3 at 208:9–13 (Special Agent Nicholas Kenney testifying that United Auto Defense operated out of St. Charles); Doc. 133, Trial Tr. 4 at 42:25–43:14 (Special Agent Kenney testifying that United Auto Defense could have filed a tax return in Missouri).

Accordingly, the Court finds that Primm's arguments fail and denies the motion for judgment of acquittal as to Count 1 on the basis of venue.

### 2. Willfulness

Primm also argues that he is entitled to a judgment of acquittal as to Counts 1, 2, and 3 because the United States failed to meet its burden of proof as to willfulness. Doc. 126 at pp. 4–6. Specifically, Primm claims that "[e]ach fact witness called by the [United States] who testified as to their knowledge of Primm's attempts to comply with his federal tax obligations stated, unequivocally, that Primm wanted to be in compliance and that he took affirmative steps to be in compliance. There is no evidence that Primm acted with the requisite willful *mens reas*: that is, voluntarily and intentionally violating a known legal duty." *Id.* at p. 6. The Court disagrees.

Counts 1, 2, and 3 all have as an element that Primm willfully committed the offense. *See* Doc. 120 at pp. 17, 19. The Court instructed the jury that "[a]n act is done 'willfully' if done voluntarily and intentionally with the purpose of violating a known legal duty." *Id.* at p. 21, Jury Instruction 16. The Court addresses each count in turn.

#### i. Count 1: Failure to file return

Jury Instruction 13 lists the elements of the crime charged in Count 1:

The crime of failure to file a tax return, as charged in Count One of the Indictment, has three elements, which are

*One*, the defendant was required to file a federal income tax return on behalf of United Auto Defense, LLC for tax year 2014;

*Two*, the defendant knew that he was required to file such a tax return; and

*Three*, the defendant **willfully** failed to file the required tax return on or before the required due date.

Doc. 120 at p. 17, Jury Instruction 13 (emphasis added).

At trial, the United States presented testimony from several witnesses. Clayton Logomasini—Primm's friend and former co-worker—testified that he connected Primm with a

bookkeeper, Stacey Brown, in an effort to help Primm with United Auto Defense's bookkeeping problems. Doc. 131, Trial Tr. 2 at 25:2–12; *Id.* at 34:8–35:1. Logomasini also referred Primm to an outside accounting firm. *Id.* at 35:2–4; *Id.* at 54: 6–12.

Brown testified that shortly after she started working as United Auto Defense's bookkeeper in mid-2014, she told Primm that he needed to hire a certified public accounting, or CPA, firm because she doesn't do income taxes. *Id.* at 91:23–92:5. With Primm's consent, Brown arranged a meeting with a CPA firm. *Id.* at 92:25–93:6. Brown, Primm, and Logomasini all attended the meeting with the CPA firm, Hochschild, Bloom and Company. *Id.* at 93:17–23. At the time of the meeting, United Auto Defense had virtually no bookwork complete. *Id.* at 102:8–11. As Brown undertook United Auto Defense's bookwork, she found that numerous transactions lacked documentation. *Id.* at 106:23–107:11; *id.* at 111:2–9; *id.* at 150:13–151:20; *id.* at 154:18–155:25; *see also* United States' Exhibits 74–76. Brown flagged each issue and repeatedly asked Primm for information on these transactions. *Id.* Although Brown continually reminded Primm that she needed to complete the bookwork to file taxes, Primm never provided Brown with information and documentation she sought. *Id.* at 182:14–16. As a result, Brown was unable to complete United Auto Defense's bookwork. *Id.*

Salvatore Hazel, a court witness coordinator with the IRS, testified that United Auto Defense did not file tax returns for the tax years 2014 and 2015. *Id.* at 278:3–283:6; *see also* United States' Exhibits 113–114. David Comiskey, a revenue agent with the IRS, calculated that United Auto Defense had a taxable income of $706,803 and owed a total of $240,313 in taxes for the tax year 2014. *Id.* at 108:15–111:15; *see also* United States' Exhibit 150.

The United States submitted evidence and testimony supporting that Primm knew he had a duty to file tax returns for United Auto Defense. For example, Brown testified that she

7

repeatedly reminded Primm about his duty to file taxes. Additionally, Brown testified that she, Logomasini, and Primm all met with a CPA firm to discuss United Auto Defense's taxes. Doc. 131, Trial Tr. 2 at 93:17 – 94: 7. The CPA firm even sent a reminder email to Brown about the tax deadline. *Id.* at 108:13–18.

Viewing the totality of the evidence in the light most favorable to the verdict, and giving the United States the benefit of all reasonable inferences, *Lincoln*, 630 F.2d at 1316–17, the Court concludes that the evidence presented at trial was more than sufficient for a reasonable jury to find that Primm willfully failed to file the required tax return.

Accordingly, the Court denies Primm's motion for judgment of acquittal as to Count 1 on the basis of willfulness.

### ii. Counts 2 and 3: Tax evasion

Jury Instruction 15 lists the elements of the crimes charged in Count 2 and 3:

The crime of tax evasion, as charged in Counts Two and Three of the Indictment, has three elements, which are:

*One,* the defendant owed substantial income tax in addition to that which he reported on his return; or substantially more than $0 if he filed no return;

*Two,* the defendant attempted to evade and defeat that additional tax; and

*Three,* the defendant **acted willfully**.

*Id.* at p. 19, Jury Instruction 15 (emphasis added).

Special Agent Nicholas Kenney testified about common methods and techniques of tax evasion. Doc. 132, Trial Tr. 3 at 197:6–200:7. Examples of tax evasion include underreporting income or overstating expenses, failing to provide information about income to accountants or bookkeepers at a company, falsifying transactions, excessive use of cash, the use of shell companies, and corporate diversion. *Id.*

8

As discussed above, Brown repeatedly asked Primm for information to complete United Auto Defense's bookwork and Primm repeatedly failed to give her the information. Brown also testified that she filed personal-tax extensions on Primm's behalf for the years 2013, 2014, and 2015, and that all three extensions reflected no estimated tax liability. Even with the extensions, Primm failed to file his tax returns for the tax years 2013–2015. *Id.* at 274:1–278:2; *see also* United States' Exhibits 98, 100. Primm also failed to file personal tax returns for the years 2012 and 2016. *Id.* at 284:12–291:15; *see also* United States' Exhibits 87–93, 95–97, 102. Primm did, however, file tax returns for the years 2005–2011.

Primm created several companies, including International Megalodons, Skyline Empire Management Group LLC, and 1st PIC (Profitable Investment Consultants), LLC. Doc. 132, Trial Tr. 3 at 211:5–212:17. Special Agent Kenney testified that he found no evidence during his investigation that any of these companies were actually used for their stated purpose. *Id.*

Allen Kreke of Marathon Administrative Group and Richard McCabe of Royal Administrative Company both testified that Primm directed them to pay monies to International Megalodons instead of United Auto Defense. Doc. 130, Trial Tr. 1 at 230:15–231:13, 234:14–234:24, 248:6–248:21 (Kreke's testimony); *id.* at 260:23–261:12 and 265:16–265:22 (McCabe's testimony); United States' Exhibits 78–81. Logomasini testified that in 2014, Primm approached him about hiding monies from his partners, which Logomasini ultimately agreed to do. *Id.* at 37:10–17. In total, Primm sent a total of $360,000 from United Auto Defense to Logomasini's company Highland Management Group. *Id.* at 37:18–43:14. In return, Highland Management company sent $180,000 to International Megalodons. *Id.* Logomasini testified that he accounted for the transactions as two separate loans that were still on Highland Management's books at the

9

time of trial. *Id.* at 67:1–9. Brown testified that Primm transferred money from United Auto Defense to International Megalodons. Doc. 132, Trial Tr. 2 at 260:18–262:21.

Hazel testified that International Megalodons had no tax returns on file for the tax years 2012–2020. Doc. 132, Trial Tr. 3 at 69:3–14; United States' Exhibits 118–122. Hazel also testified that 1st PIC had no tax returns on file for the tax years 2012–2018. Doc. 132, Trial Tr. 3 at 68:5–8; United States' Exhibits 126, 128–132.

Giving Primm as much benefit of the doubt as he reasonably could, Revenue Agent Comiskey calculated that for the tax year 2014 Primm had $386,621 in unreported income, consisting of $20,000 in salary or wages (as shown on his United Auto Defense W-2), $62,732 in commissions, and $303,889.05 in distributions; and for tax year 2015, $650,357 in unreported income, consisting of $119,425 in salary or wages (as shown on his United Auto Defense W-2), $219,802.56 in commissions, and $311,129.55 in distributions. Commissions consisted of monies paid directly to Primm from Marathon and Royal, and not to United Auto Defense. Doc. 132, Trial Tr. 3 at 113:22–114:2. Distributions consisted of monies Primm received directly from United Auto Defense. *Id.* at 114:5–8. In total, Revenue Agent Comiskey testified that Primm had $1,036,978 in unreported income for the years 2014 and 2015, and as a result, he owed a total of $144,375 in personal taxes for those two years. *Id.* at 132:3–9. Because Primm had an income over $10,150 in 2014 and over $10,300 in 2015, Primm was required to file personal-tax returns but failed to do so. *See* Doc. 132, Trial Tr. 3 at 112:18–113:5.

Viewing the totality of the evidence in the light most favorable to the verdict and giving the United States the benefit of all reasonable inferences, *Lincoln*, 630 F.2d at 1316–17, the Court concludes that the evidence presented at trial was more than sufficient for the jury to find Primm willfully committed the offenses in Counts 1, 2, and 3. The jury weighs witness

testimony and evaluates the evidence admitted at trial. *United States v. Ireland*, 62 F.3d 227, 230 (8th Cir. 1995) (citing *United States v. Agofsky*, 20 F.3d 866, 869 (8th Cir.), *cert. denied*, 513 U.S. 909 (1994)). Therefore, the Court declines to overturn the jury's guilty verdict. *See United States v. Surratt*, 172 F.3d 559, 565 (8th Cir. 1999) ("It is not necessary for the evidence before the jury to rule out every reasonable hypothesis of innocence. It is enough that the entire body of evidence be sufficient to convince the fact-finder beyond a reasonable doubt of the defendant's guilt." (citing *United States v. Noibi*, 780 F.2d 1419, 1422 (8th Cir. 1986))).

In sum, the evidence was sufficient to convince the jury of Primm's guilt beyond a reasonable doubt. The evidence painted a clear picture that Primm had filed tax returns in the past, admitted his bookkeeping problems to his friend, hired a bookkeeper, and met with an accounting firm but then not only stymied the efforts to bring Primm into compliance with his tax obligations but also directed his business associates to divert money to shell companies. Accordingly, the Court denies Primm's motion for a judgment of acquittal.

### III.    Motion for a new trial

#### A.    Standard

Rule 33(a) of the Federal Rules of Criminal Procedure provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Rule 33(b) similarly "allows district courts to vacate a conviction and grant a new trial on the basis of newly discovered evidence." *United States v. Meeks*, 742 F.3d 838, 840 (8th Cir. 2014). The decision to grant or deny a Rule 33 motion "is within the sound discretion of the [district] court." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002). The court "can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict[.]" *Id.* (citation and internal quotation marks

omitted). But the court must allow the jury's verdict to stand unless the court determines a miscarriage of justice will occur. *Id.*; *see also United States v. Fetters*, 698 F.3d 653, 656 (8th Cir. 2012) ("Motions for new trials are generally disfavored and will be granted only where a serious miscarriage of justice may have occurred." (citation omitted)); *United States v. Worman*, 622 F.3d 969, 978 (8th Cir. 2010) ("A district court will upset a jury's finding only if it ultimately determines that a miscarriage of justice will occur." (citing *Campos*, 306 F.3d at 579)).

For allegations of trial error, the court should "balance the alleged errors against the record as a whole and evaluate the fairness of the trial" to determine whether a new trial is appropriate. *United States v. McBride*, 862 F.2d 1316, 1319 (8th Cir. 1988). "The granting of a new trial under Rule 33 is a remedy to be used only 'sparingly and with caution.'" *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004) (quoting *Campos*, 306 F.3d at 579). And to obtain a new trial because of newly discovered evidence, a defendant must show that: "(1) the evidence was unknown or unavailable at the time of trial; (2) [the defendant] was duly diligent in attempting to uncover the evidence; (3) the newly discovered evidence is material; and (4) the newly discovered evidence is such [that] its emergence probably will result in an acquittal upon retrial." *Meeks*, 742 F.3d at 840 (citing Fed. R. Crim. P. 33(b); *United States v. Rubashkin*, 655 F.3d 849, 857 (8th Cir. 2011)).

    **B.**     **Analysis**

Primm argues that he is entitled to a new trial because the United States committed *Giglio, Brady*, and Jencks Act violations by failing to disclose the criminal history of one of its witnesses and the tax returns of Highland Management. Having addressed similar issues during trial, and having carefully considered the present motion, the Court disagrees.

12

### 1.     Logomasini's criminal history

Primm claims that he is entitled to a new trial because the United States failed to disclose the criminal history of Logomasini before his testimony. Doc. 126 at p. 7. Primm argues that this failure is a *Giglio* violation.

Logomasini testified on the second day of trial. That evening, at approximately 6:30 p.m., the United States discovered that it had inadvertently failed to disclose criminal history for Logomasini. Doc. 132, Trial Tr. 3 at 6:7–13; *see also* Doc. 137 at p. 8. This criminal history amounted to an eight-year-old DUI conviction for which Logomasini received a three-year suspended imposition of sentence and five-year term of probation. Doc. 132, Trial Tr. 3 at 6:16–7:4. The United States immediately called defense counsel to advise of this fact, and to offer to arrange to have Logomasini available for additional testimony. *Id.* at 7:5–19. Defense counsel advised that they needed to confer with their client first, but that they did not believe that Logomasini would need to fly back to testify. *Id.* at 24:20–25:2. The parties further discussed having Logomasini testify by video or entering a stipulation as to the relevant criminal history. *Id.* at 7:5–19. That evening, at 10:50 p.m., defense counsel sent an email stating the following: "We have discussed this issue with Mr. Primm. We intend to raise this issue with the court in the morning, but do not anticipate seeking Mr. Logomasini's return for live testimony." Doc. 137 at pp. 8–9.

The next morning, defense counsel provided the United States a hard copy of the opinion in *United States v. Garrison*, 888 F.3d 1057 (9th Cir. 2018), and stated that they would be seeking a jury instruction similar to the one found in footnote 3 of the opinion – essentially, one advising the jury that the United States had violated Primm's constitutional rights. Doc. 137 at p. 9. The Court assumed admissibility of the conviction, heard arguments on the issue, and

13

discussed several options with the parties. Doc. 132, Trial Tr. 3 at 6:6–40:16. The Court first suggested ordering the United States to bring Logomasini back to testify in person, thus allowing the defense latitude to redevelop points on cross-examination and to further cross-examine the witness concerning the prior conviction. *Id.* at 19:13–20:16. The Court also considered Primm's request for a jury instruction that the United States violated Primm's constitutional rights, distinguished the *Garrison* case from the present circumstances, and considered tailoring a jury instruction. *Id.* at 23:17–23:25 and 25:15–26:1. The Court further considered ordering that Logomasini be brought back for testimony via videoconference upon Primm's agreement to waive any confrontation clause issues. *Id.* at 26:1–26:6. The defense then notified the Court that they may decide not to elicit any further testimony from Logomasini regarding the prior conviction. *Id.* at 26:9–26:13 and 31:23–32:4.

After a 45-minute recess, the Court stated that it considered the nature of the conviction and determined that there was, at best, a minimal nexus between the conviction and how it may have impacted the witness' conduct, and also, a minimal impact on how an earlier disclosure would have affected trial strategy. *Id.* at 38:13–38:24. As such, the Court offered a remedy to the defense of recalling Logomasini at the conclusion of Special Agent Kenney's testimony. *Id*. at 38:25–39:4. The Court then provided the parties with a real-time transcript of the testimony of Logomasini to help inform any decisions with respect to the matter. *Id.* at 39:6–39:25. The Court gave the parties an extended lunch break to consider the options. *Id.* at 40:3–40:11.

Following the recess, the defense advised the Court that the remedy they sought, in lieu of calling Logomasini back to testify, was to ask Special Agent Kenney the following question on cross-examination: "During your investigation you learned that Clayton Logomasini was on five years of probation for a DUI conviction beginning in 2013; correct?" *Id.* at 88:18–89:4. The

14

United States had no objection to the proposal. *Id*. at 89:5–89:6. The Court accepted the proposal. *Id*. at 89:7–89:9. The Court then swore in Primm and inquired of him; Primm stated that he understood the issue, approved of the proposal, and agreed that the resolution his counsel proposed was acceptable to him. *Id*. at 89:10–91:14.

Special Agent Kenney testified on direct examination later that day. Cross-examination of Special Agent Kenney extended into the following morning. The defense did not ask the question about Logomasini's prior criminal history that was proposed by Primm's counsel and approved by the Court.

The record demonstrates that Primm's counsel had various options available to remedy the alleged *Giglio* and *Brady* violations but then made the strategic decision not to use Logomasini's eight-year-old DUI conviction at trial. The Court finds that given the overwhelming evidence of Primm's guilt as established by the other witnesses, the prosecution's case did not hinge on Logomasini's testimony. Even so, myriad reasons exist why Primm and his counsel chose not to use the conviction; for example, they could have decided that such a conviction would have had minimal impeachment value, or would have seemed to the jury to be a "stretch" that would alter the credibility of Primm or his counsel. Regardless of the reason, having made the decision not to raise to the jury the DUI conviction, and the jury having spoken, Primm cannot now get a new trial. *See, e.g., United States v. Seago*, 930 F.2d 482, 489 (6th Cir. 1991) ("We interpret Rule 33 to proscribe attempts to change defense strategy after an unfavorable verdict by claiming that evidence that the defendant or defense counsel knew but elected not to present at trial is newly discovered."). While the *Seago* court considered the issue in the context of newly discovered evidence, the reasoning applies with equal force here. For all

15

of these reasons, the Court denies Primm's Rule 33 motion for a new trial on the basis of Logomasini's DUI conviction.

### 2. Highland Management's tax returns

Primm also argues that Highland Management's tax returns constitute *Brady*, *Giglio*, and Jencks Act materials, and that the United States' failure to disclose the materials entitle him to a new trial. The Court disagrees.

Primm crossed-examined Logomasini, Revenue Agent Comiskey, and Special Agent Kenney about Highland Management's tax returns. On the last day of trial, Special Agent Kenney testified that he reviewed Highland Management's tax returns. Doc. 34, Trial Tr. 4 at 34:9–11. Primm concedes that he did not raise the issue at trial. Doc. 126 p. 3 ("Although counsel for Primm did not recall seeing the subject tax returns in discovery, no objection was lodged because counsel for Primm wanted to review the provided discovery again so as to not raise a non-existent issue with this Court."). Following trial, counsel for Primm was unable to locate the tax returns in discovery and reached out to the United States. The United States responded by saying "[w]e do not have any tax returns for Highland Management in our possession. Even if we did have such returns, we do not believe we could disclose such information to you pursuant to the restrictions set forth in 26 U.S.C. 6103." Doc. 126 at p. 2.

Primm argues that "[Highland Management's] tax returns were reviewed by Special Agent Kenney as part of his investigation and were material to the [United States'] tax calculations, thereby making them material to any defense that Primm might offer. Further, the returns were statements signed by a different [United States] witness, Clayton Logomasini, and were not provided pursuant to disclosure requirements under the Jencks Act even though they were material to his testimony." *Id.* at p. 4. The United States contends that "Highland

16

Management tax returns are not *Brady*, *Giglio*, or Jencks Act materials, and the [United States] was not required to disclose them." Doc. 137 at p. 26.

### i. *Giglio* and *Brady*

"Under [*Giglio*], the government must disclose matters that affect the credibility of prosecution witnesses. [F]or example, a defendant is entitled to know of a promise to drop charges against a key witness if that witness testifies for the government. However, the nondisclosure of *Giglio* evidence only justifies a retrial if the withheld information is deemed material." *United States v. Beckman,* 787 F.3d 466, 492 (8th Cir. 2015) (alterations in original) (citations and quotations omitted); *see also Giglio v. United States,* 405 U.S. 150, 153–55 (1972).

"*Brady* requires the [United States] to disclose evidence that is both 'favorable to an accused' and 'material either to guilt or punishment.'" *United States v. Horton*, 756 F.3d 569, 753, 757 (8th Cir.2014) (quoting *United States v. Whitehill*, 532 F.3d 746, 753 (8th Cir. 2008)); *see also Brady v. Maryland*, 373 U.S. 83, 87 (1963). "To show a *Brady* violation, the defendant must establish that (1) the evidence was favorable to the defendant, (2) the evidence was material to guilt, and (3) the government suppressed evidence." *United States v. Ladoucer*, 573 F.3d 628, 636 (8th Cir. 2009) (quotations, alteration, and citations omitted). "Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (quotation, alteration, and citation omitted); *see also United States v. Pulliam*, 566 F.3d 784, 787 (8th Cir. 2009) ("The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (quotation, alteration, and citation omitted)).

17

Primm makes no substantive arguments as to how the tax returns of Highland Management constitute either *Brady* or *Giglio* materials. Primm claims that the Highland Management tax returns "were material to the [United States'] tax calculations," and then infers that they were material to "any defense that Primm might offer." Doc. 126 at p. 4. Contrary to Primm's assertions, no evidence exists to show that the Highland Management tax returns were material to the United States' tax calculations.

First, Primm erroneously attributes the United States' tax calculations to Special Agent Kenney. However, the evidence adduced at trial showed that Revenue Agent Comiskey was responsible for completing the tax calculations. Revenue Agent Comiskey's testimony on cross-examination makes clear that: (a) he did not ever review any tax returns for Highland Management; (b) he was able to finalize his tax computations, including making an assessment as to the proper categorization of certain transactions involving Highland Management, without reviewing any tax returns of Highland Management; and (c) even assuming that Highland Management did report the transactions as a loan on its books and tax returns, Revenue Agent Comiskey still would have concluded that the transactions from Highland Management to International Megalodons were a taxable event as to Primm. This testimony contradicts Primm's assertions that the tax returns were material to Revenue Agent Comiskey's tax calculations. In sum, Primm fails to demonstrate that Highland Management's tax returns are material evidence and that there is any reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See Ladoucer,* 573 F.3d at 636.

   ii.  **Jenks Act**

Primm also argues that the Highland Management's tax returns constitute Jencks Act materials with respect to Logomasini. Doc. 126 at p. 8. The Jencks Act requires that:

18

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500(b). The Act defines "statement" as: "(1) a written statement made by said witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury." 18 U.S.C. § 3500(e).

Primm argues that the Jencks Act requires the United States to disclose Highland Management's tax returns because the tax returns are "statements" signed by Logomasini, a United States witness. However, Primm cites to no authority that supports his argument, the Court has found no case law that supports Primm's argument, and persuasive authority to the contrary exists. *See United States v. Carrillo*, 561 F.2d 1125, 1128 (5th Cir. 1977) ("Unless the tax returns were substantial verbatim recitals they were not clearly statements within the meaning of the Jencks Act." (citing *United States v. Augenblick*, 393 U.S. 348 (1969)); *United States v. Phillips*, 577 F.2d 495, 503 (9th Cir. 1978) ("There is some doubt whether . . . tax returns constitute "statements." Cases under the Jencks Act generally concern prior testimony, written materials, or interviews relating to the alleged offenses."); *United States v. Page,* 808 F.2d 723, 730 (10th Cir. 1987) ("[T]ax returns . . . are clearly not statements discoverable under the Jencks Act." (citing *Carrillo*, 561 F.2d at 1128)); *see also United States v. Covello,* 410 F.2d 536, 545 (2d Cir. 1969) ("Appellant . . . contends that he was entitled to the federal income tax

19

returns of the [United States'] main witnesses as 'statements' of the witnesses within the meaning of 18 U.S.C. § 3500. While there is no decision on point, the argument is unpersuasive.").

The Court finds that Primm's argument lacks merit and fails. However, even if Primm's argument did have merit, he would still not be entitled to a new trial because, as discussed above, the Court finds that Highland Management's tax returns were not material.

## IV.   Conclusion

The Court finds that Primm is not entitled to a judgment of acquittal under Rule 29 or a new trial under Rule 33. Accordingly, the Court denies Primm's [126] Motion for Judgment of Acquittal, or in the Alternative, Motion for New Trial. Sentencing remains set for January 26, 2022, at 1:00 p.m., by videoconference at Primm's request.

So Ordered this 26th day of January 2022.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE